## Thomas J. Drake *vs.* City of Lowell.

A city is liable, under Rev. Sts. *c. 25*, § 22, to pay damages to a person who receives an injury by the fall of an awning projected over the sidewalk of a street by the owner of a building, if the awning be dangerous to travellers for the space of twenty four hours before the injury happens.

Trespass upon the case to recover damages for an injury sustained by the plaintiff, by reason of defects and incumbrances in and over a public sidewalk on Merrimack Street in Lowell. Trial before *Hubbard*, J. who made the following report thereof:

" The defendants admitted that said street, including the sidewalk, was at the time of the injury, and for a long time before had. been, a public highway in and through a compact part of Lowell. The plaintiff admitted that the title to the land contiguous to and under the sidewalk, where the injury was received, was in John Nesmith, who erected thereon, several years since, a brick building, containing three stores, fronting and adjoining the said street.

" It appeared that the sidewalk was of brick, fifteen feet in width, and extended along the whole length of the building. It also appeared that in May 1843, one of the tenants, who occupied a store in said building, made and extended from the building, into the street, over the public sidewalk, an awning constructed of boards and pine timber three or four inches square, for shade to the windows and doors of the basement story of the building. The rafters, extending from the building, were supported on the outer edge, towards the centre of the street, by posts standing in the edge of the sidewalk; and both posts and rafters were of the dimensions above named. The awning, on the top, was covered with boards, and was more than fifteen feet wide, and nearly fifty feet in length.

" It was conceded by the parties, that prior to the injury to the plaintiff, the said tenant had removed from the store, leaving the same in the occupancy of another tenant of said Nesmith.

" Evidence was introduced, tending to prove that in the months of November and December 1844, and January 1845, there were several snows, amounting in the whole to the depth of twenty eight inches; and that the last of these snow storms ended on the twenty second day of said January, at which time the snow fell to the depth of four inches.

" It further appeared in evidence, that on the evening of the twenty fourth of the same January, the awning, being incumbered with large quantities of snow and ice, fell upon the plaintiff, and crushed him down upon the sidewalk, with the boards, timbers, snow and ice upon him, he being lawfully travelling on foot, in and through said highway; by means of which, it appeared that he was greatly injured, and that, for a considerable time, he was sick and lame, and wholly unable to do his usual labor and business, for the term of three months next ensuing.

" It further appeared, that the defendants, for the last fifteen or sixteen years, had used and repaired said street, as a common highway, and had passed an ordinance for the prevention of abuses in the public streets, containing regulations applicable to sidewalks generally, and had, since the accident in question, adopted or passed several other by-laws applicable to sidewalks and awnings. And also that one of their by-laws, passed in March 1840, contained the following section : ' No person shall place or establish any awning or shade before his or her place of business or dwelling-house, over any part of any street or sidewalk, unless the same be safely fixed and supported, so as in no wise to incommode passengers, and so that the lowest part of such awning or shade shall be at least seven feet in height above the sidewalk or street.' And it was conceded, for the purposes of the trial, that the awning in question was of the height required by that section, and that, when it was first built, it was safely fixed and supported.

" It also appeared in evidence, that for several days next prior to the day of the injury complained of, the awning had been incumbered with snow and ice, and that, on the morning of that day, it had been discovered by one witness, that

Drake *v.* City of Lowell.

the rafters were considerably bent by the weight, and one of them broken.

" To prove notice to the defendants, the plaintiff introduced a witness, who testified that he was superintendent of streets in Lowell, for the two years ending in April 1845; that on the 20th or 21st of January 1845, and three or four days prior to the injury to the plaintiff, he (the witness) discovered that the awnings generally, on the north side of Merrimack Street, including the one in question, were incumbered with snow and ice, and in a shattered and unsafe condition, of which he then gave immediate notice to the city marshal. And there was other testimony in the case, tending to show notice to the defendants of the said defects and incumbrances.

" Upon the foregoing evidence, the defendants contended that the defects and incumbrances proved were insufficient to render the defendants liable, and that therefore the suit could not be maintained. Upon which the presiding judge, for the purpose of bringing the question of law, as to the liability of the defendants, before the whole court, advised a nonsuit, subject to their opinion upon the foregoing facts. If the defendants are liable, the nonsuit is to be taken off, and a new trial granted; otherwise, the nonsuit is to be confirmed."

This case was argued at the last October term.

*Caverly*, for the plaintiff. The defendants are liable to the plaintiff, on the Rev. Sts. *c.* 25, §§ 1, 22, 24. If they are not liable, he has no remedy. See *Bigelow* v. *Weston*, 3 Pick. 267, 269. *Loker* v. *Brookline*, 13 Pick. 343, 346 *Currier* v. *Lowell*, 16 Pick. 174. *Worster* v. *Proprietors of Canal Bridge*, 16 Pick. 541. *French* v. *Inhabitants of Brunswick*, 8 Shepley, 29. *Springer* v. *Inhabitants of Bowdoinham*, 7 Greenl. 442.

The case of *Frost* v. *Inhabitants of Portland*, 2 Fairf. 271, cannot be distinguished, in principle, from the case at bar. The liability is on the defendants, in the first instance, though they may have a remedy over, against the owner of the awning. *Rex* v. *Inhabitants of St. George. Hanover Square*, 3 Campb. 222.

The defendants made the awning their own, by not removing it, as they ought to have done. See *Holley* v. *Winooskie Turnpike Co.* 1 Aik. 74, 80. *Perley* v. *Chandler*, 6 Mass. 456.

*S. Ames*, for the defendants. The plaintiff, in order to entitle himself to recover, must not only show that he received an injury, while he was using due care, but must also show that the defendants have been guilty of some breach of a duty imposed on them by statute. The Rev. Sts. *c.* 25, do not make towns insurers. By § 22, there must be a " defect, or want of repair," for twenty four hours, before the party, that is by law obliged to make repairs, can be held liable for an injury received by reason of any defect, or want of repair. In the present case, no omission of the defendants' duty is shown The street and the sidewalk, for aught that appears, were in good repair. The occupant of the building had a right to make the awning ; for it violated no existing law. The owners of land adjoining a highway may do any thing that is not inconsistent with the public easement. *Copp* v. *Neal*, 7 N. Hamp. 275. *Stevens* v. *Whistler*, 11 East, 51. *Stackpole* v. *Healy*, 16 Mass. 33. *Perley* v. *Chandler*, 6 Mass. 456. *Atkins* v. *Bordman*, 2 Met. 457. *O'Linda* v. *Lothrop*, 21 Pick. 292.

The plaintiff is not remediless, as his counsel supposes, though he cannot recover of the defendants. See *Smith* v. *Smith*, 2 Pick. 621.

DEWEY, J. The defendants insist that no legal liability attaches to them for the damage sustained by the plaintiff. The only question arising in the case is, whether the provisions of Rev. Sts. *c.* 25, § 22, apply to a case like the present. If so, and the duty devolves upon the municipal officers of a city to see that " all highways shall be kept in repair, so that the same may be safe and convenient for travellers, at all seasons of the year," the liability of the defendants would seem to be easily established. It is said that the street was in good order; that no obstruction or want of repair existed on the sidewalk ; and that every thing being thus well on the actual

travelled path, the city is not to be made responsible for an injury occasioned by acts of others in placing insecure projections from buildings adjacent to the public streets, but so far elevated above the sidewalk, as not to interfere with the ordinary use of the same by the traveller. It is also further urged, that the owner of the land adjacent to a public street, and especially one who has the fee of the land on which the sidewalk is constructed, (the city having only an easement for a public street,) may erect and maintain such projections, extending from the adjacent building over such sidewalk.

It is upon considerations of this character, strengthened by the very general practice so long permitted in large towns and cities, where real estate is so valuable, of making such projections overhanging the public sidewalks, that it is now strongly pressed upon us, that the owners and occupants of such projections are alone responsible for an injury occasioned by their defective construction originally, or want of subsequent repair.

We can entertain no doubt that the general provision of the Rev. Sts. c. 25, § 1, requiring that the highways be kept in a state safe and convenient for travellers at all times, is alike appli able to the city and the town. To effect this object, § 3 confers full power upon every surveyor of highways " to remove all gates, bars, enclosures, or other things, that shall in any manner obstruct or incumber any highway, or incommode or endanger persons travelling thereon." This provision would of itself confer the power to remove all projections that endanger the persons passing in the street.

The duty imposed upon the city in this respect is essential to the safety of the traveller, and is not an unreasonable burden. To subject the city to an action for damages occasioned by such causes, there must have been a defect or want of repair in the projection, of such a nature as rendered its continuance dangerous to the public safety.

The supervision of all such projections is properly placed in the hands of the city officers, who have the power to cause their removal, whenever it shall become necessary for the

safety of the traveller. They may be always regulated by the city ordinances, and the security of the city be properly guarded by by-laws, imposing suitable penalties upon all persons who shall, by such erections, endanger the safety of the traveller.

The court are therefore of opinion that the nonsuit be taken off, and a new trial granted.